## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES HERBERT EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CV-90 NAB |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on James Edwards' appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act.  The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g).  The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  [Doc. 10.]  The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence.  Based on the following, the Court will affirm the Commissioner's decision.

### Issues for Review

Edwards presents two issues for review.  First, he alleges that the administrative law judge (ALJ) committed reversible error in failing to properly evaluate the effect of Edwards' subjective complaints of pain on his ability to work.  Edwards asserts that the ALJ's credibility finding was

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security.  Andrew M. Saul became the Commissioner of Social Security on June 4, 2019.  When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party.  Fed. R. Civ. P. 25(d).  Later proceedings should be in the substituted party's name and the Court may order substitution at any time.  *Id.*  The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

conclusory, misstated the evidence of record, and did not consider the record as a whole. Second, Edwards contends that the ALJ failed to establish that there is other work in the national economy that Edwards can perform, because the ALJ failed to pose a hypothetical question which included all of Edwards' medically determinable functional limitations. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart,* 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart,* 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart,* 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire

administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d. 913, 915 (8th Cir. 2012).

## Discussion

### ALJ Credibility Determination

First, Edwards contends that the ALJ did not properly evaluate his credibility pursuant to a newly revised social security report and regulations. Several significant revisions of Social Security regulations and reports became effective recently. The Social Security Report regarding evaluation of symptoms in social security disability claims was superseded on March 16, 2016. *See* SSR 16-3P, 1996 WL 374186, Social Security Ruling 16-3p, Policy Interpretation Ruling Title II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of Individual Statements (July 2, 1996). Also, many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the Social Security Administration uses the regulations in effect at the time that this claim was filed. In his Reply Brief, Edwards acknowledges that the ALJ used the regulations effective at the time of the ALJ's opinion[2], therefore, the Court will not address the arguments regarding the ALJ's failure to use the newly revised regulations and the new social security report.

Next, Edwards contends that the ALJ did not discuss all of the credibility factors. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

    (1) The claimant's daily activities;

    (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

---

[2] The ALJ's opinion was issued February 22, 2016.

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

In this case, the ALJ discussed the *Polaski* standard and each of the *Polaski* factors as applicable to Edwards' case. The ALJ discussed Edwards' activities of daily living by referencing Edwards' testimony and the Adult Function Report (Tr. 34, 67-85, 246-53). The ALJ discussed subjective evidence of the duration, frequency, and intensity of pain (Tr. 34-37). For example, the ALJ discussed Edwards' testimony regarding his pain and the reports regarding pain he made to his treatment providers. (Tr. 34-37.) The ALJ also discussed any precipitating or aggravating factors (Tr. 35-36), which included a fall at work in December 2012, a fall down stairs in February 2014, a roll over motor vehicle accident in July 2014, and fall in May 2015. (Tr. 35-36.) The ALJ discussed the dosage, effectiveness and side effects of any medication (34-35, 37) when discussing the effectiveness and use of steroid injections to manage Edwards' pain along with physical therapy rather than surgery. Then, the ALJ described Edwards' testimony regarding his functional

restrictions along with the results of objective medical testing throughout his treatment. (Tr. 34-38.) If an ALJ discredits a claimant's credibility and gives a good reason for doing so, the Court will defer to its judgment even if every factor is not discussed in detail. *Milam v. Colvin*, 794 F.3d 978, 984 (2015). Based on the ALJ's thorough summary of the Polaski factors as applied to Edwards' case, the Court concludes that the ALJ gave proper consideration to all of the factors, even if some were discussed in more detail than others.

Then, Edwards asserts that the ALJ's credibility determination is erroneous, because the ALJ improperly discounted his allegations of pain. The ALJ found that treatment notes in the record do not sustain Edwards' allegations of disabling symptoms. (Tr. 38.) The ALJ also determined that the credibility of Edwards' allegations was weakened by inconsistencies between his allegations and the medical evidence. (Tr. 38.) "Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). An ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, "an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). "While the claimant has the burden of proving that the disability asserted results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between a physical impairment and the claimant's subjective pain need not be produced." *Northcutt*, 581 F.2d at 166. "Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v.*

*Heckler*, 726 F.2d 440, 442 (8th Cir. 1984). The inability to determine the source of claimant's pain does not mean the pain does not exist. *See Hight v. Shalala*, 986 F.2d 1242, 1244 (8th Cir. 1993) (fact that x-rays were normal does not mean claimant did not have difficulty breathing, because there is no evidence that normal x-rays were inconsistent with alleged breathing problems).

"As is true in many disability cases, there is no doubt that [claimant] is experiencing pain." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900. Edwards contends that the ALJ selectively focused on portions of Edwards' Adult Function Report, misconstrues the report, and failed to consider the record as a whole. The Court disagrees. The ALJ's opinion indicates that the ALJ reviewed the entire record, including all of the information provided by Edwards in his testimony and Adult Function Report. The ALJ identified inconsistencies between the objective medical record and Edwards' allegations. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers). The ALJ also noted where Edwards did not follow medical advice to wear a cervical collar for only three months. Edwards continued to wear the cervical collar after being told by multiple doctors that it was no longer needed and he was informed about the complications of long term collar use against medical advice. (Tr. 483-84, 1307, 1310-1311, 1465.) He also told his doctors that another doctor told him to continue to wear the collar despite evidence to the contrary. (Tr. 1465, 1477, 1589.) The medical record indicates Edwards wore the

cervical collar from July 2014 to at least February 2016. The ALJ's findings regarding the limitations caused by pain are supported by substantial evidence in the record as a whole.

**Severe Impairments**

Next, Edwards contends that the ALJ should have found that his ulnar neuropathy and cervical radiculopathy diagnoses were severe impairments. Further, he contends that the ALJ failed to present a hypothetical question to the vocational expert that included limitations from the ulnar neuropathy, cervical radiculopathy, and carpel tunnel syndrome. After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii), 416.909, 416.920(a)(4)(i)-(ii)[3]. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R §§ 404.1520(c), 416.920(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby*, 500 F.3d

[3] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed.

at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)).  "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard."  *Kirby*, 500 F.3d at 708.

The ALJ found that Edwards had the severe impairments of degenerative disc disease of the cervical and lumbar spine; spondylosis of the cervical spine, history of a cervical compression fracture, mild carpal tunnel syndrome, and chronic obstructive pulmonary disease.  (Tr. 31.)  The ALJ held that Edwards did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 32.)  The ALJ then determined that Edwards had the residual functional capacity to perform sedentary work with the additional limitations of (1) no climbing stairs, ramps, ropes, ladders, or scaffolds;  (2) occasionally stooping, kneeling, or balancing, but never crouching or crawling; (3) frequently but not constantly reaching in all directions, except no reaching overhead; (4) frequently, but not constantly handling, which is defined as gross manipulation; and (5) avoid concentrated exposure to extreme heat and cold, pulmonary irritants, unprotected heights, excessive vibrations, and hazardous machinery.  (Tr. 33.)  The RFC is defined as the most the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is a function-by-function assessment of an individual's ability to do sustained work-related physical and mental activities on a regular and continuing basis.[4]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  *Pearsall*, 274 F.3d at 1217.  An RFC determination made by an

---

[4] A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

**Cervical Radiculopathy and Ulnar Neuropathy**

Edwards was first diagnosed with cervical radiculopathy in September 2014 and ulnar neuropathy in 2015. Cervical Radiculopathy is "a disease of the cervical nerve roots, often with neck or shoulder pain." Dorland's Illustrated Medical Dictionary 1571 (32nd ed. 2011). Ulnar neuropathy is "a functional disturbance or pathological change in the peripheral nervous system" related to the ulnar nerve, which is found in the front and back medial part of the hand, some flexor muscles on the front of the forearm, and many muscles and joints of the hand and elbow. Dorland's Illustrated Medical Dictionary 1261, 1268, 1270 (32nd ed. 2011). The ALJ did not find that Edwards' ulnar neuropathy and cervical radiculopathy diagnoses were severe impairments and did not discuss the reasons why they were not considered severe. The Court notes that the ALJ found that Edwards had the severe impairments of degenerative disc disease of the cervical and lumbar spine and spondylosis of the cervical spine, and history of a cervical compression fracture. (Tr. 31.) Cervical spondylosis is a degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connective tissue, sometimes with pain or paresthesia radiating along the upper limbs as a result of pressure on the nerve roots. Dorland's Illustrated Medical Dictionary 1754 (32nd ed. 2011).

But, Edwards' contention that the ALJ did not consider these impairments is not supported by the record as a whole. The ALJ described the conditions, symptoms, and treatment for ulnar neuropathy and cervical radiculopathy when discussing the medical evidence used to support the RFC determination. (Tr. 36-37.) After Edwards' car accident, in July 2014, his doctor diagnosed him with cervical spine fracture with probably radiculopathy of the right upper extremity. (Tr.

525-26.) He had reduced strength in his right shoulder abductors, wrist flexors and wrist extensors. (Tr. 526.) In September 2014, a nerve conduction study indicated cervical radiculopathy in the right arm, mild carpal tunnel syndrome on the right, and no evidence of ulnar neuropathy. (Tr. 489-92, 1425-26.) A myelogram performed on July 21, 2015 indicated cervical radiculopathy. (Tr. 1518.) Medical records from a neurosurgeon and pain management doctor between September 2015 and November 2015 indicate diagnoses of cervical radiculopathy. (Tr. 1463-69, 1471.) The medical records from the visits also indicate negative Hoffman's sign, Spurling's sign, and Tine's sign at the elbow and wrist. (Tr. 1463, 1465, 1466-67.). On October 1, 2015, a nerve conduction study indicated right and left carpal tunnel syndrome, left ulnar neuropathy, and right and left cervical radiculopathy, described as either borderline or moderately outside normal range. (Tr. 1487-97.) In February 2016, Edwards received an assessment for his right arm and left leg radiculopathy from a different surgeon. (Tr. 1580-81.) During the physical examination, Edwards stated he could not articulate his neck in either direction and was wearing a cervical collar. His right upper limb examination indicated 5 out of 5 deltoids, biceps and triceps 5 out of 5, wrist flexion and extension 5 out of 5, finger abduction and adduction on the right side was mildly reduced in his ring and little finger. His sensation was mildly reduced in the right C7 dermatomal distribution. (Tr. 1581.) Dr. Rory KJ Murphy opined that "his imaging shows no obvious compressive lesion that would explain his myopathic or radiculopathy symptoms." (Tr. 1581.)

The ALJ's opinion also referred to Edwards' testimony that he had pain in his shoulders and numbness in his arms. (Tr. 34, 68-69, 73-74.) The ALJ referenced Edwards' testimony that his impairments negatively limited his ability to lift and reach, including the inability to lift more than five pounds. (Tr. 34.) The ALJ also included manipulative limitations in the RFC determination limiting reaching and handling to no more than a frequent basis and no overhead

reaching. (Tr. 33.) Based on the foregoing, the Court finds that the ALJ properly considered these impairments in combination with the other impairments and accounted for these impairments in the RFC determination. Although the ALJ could have more effectively addressed these specific diagnoses, "an arguable deficiency in opinion-writing technique does not require [the Court] to set aside an administrative finding when the deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)).

Because the Court has found that the ALJ's opinion considered and accounted for any limitations caused by the ulnar neuropathy and cervical radiculopathy, the Court finds no error with the hypothetical question posed to the vocational expert. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). A "hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297. "[T]he ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* at 296. "However, the hypothetical question need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005). While expressing disagreement with the ALJ's limitations as being insufficient, Edwards has not meet his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC).

### Carpal Tunnel Syndrome

Finally, the ALJ found that Edwards' carpal tunnel syndrome was a severe impairment, but Edwards asserts that the ALJ failed to include sufficient restrictions regarding carpal tunnel

syndrome in the hypothetical question to the vocational expert. The Court disagrees. The limitations included in the hypothetical question to the vocational expert were supported by substantial evidence as discussed above and Edwards has not met his burden to indicate a more restrictive RFC. *See Pearsall*, 274 F.3d at 1217.

### Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 13, 19.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of August, 2019.